**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**January 9, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-50341
_____

EDWARD MICHAEL YOUNG,

                                        Petitioner - Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONS DIVISION,

                                        Respondent - Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

Before REAVLEY, JOLLY, and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     Edward Michael Young was convicted of murder and is now
serving a sixty-year sentence in the Texas prison system.  He
appeals the district court's denial of his petition for a writ of
habeas corpus in which he alleges ineffective assistance of
counsel.  He bases his claim on his attorney's failure to move for
the dismissal of the prosecution under applicable Texas statutes
(that have subsequently been amended), which required dismissal of
the prosecution with prejudice if the indictment was untimely.  The
indictment is conceded to have been untimely.  The state habeas
court concluded that Young's counsel had, indeed, rendered
deficient performance by failing to move for dismissal of the

prosecution. It further concluded that there was a reasonable probability that, but for that deficiency, Young never would have been tried and, hence never convicted, of the crime for which he is presently imprisoned. This conclusion was based on the court's interpretation of state law and its application to the facts of this case. See TEX. CODE CRIM. P. arts. 28.061, 32.01 (West 1989). Yet, the state habeas court ultimately denied relief, concluding that, despite the deficient performance of counsel that affected the outcome, Young was not prejudiced. Under the state court's application of Strickland v. Washington, 466 U.S. 668 (1984), and Lockhart v. Fretwell, 506 U.S. 364 (1993), prejudice was to be determined by reference to current law, rather than the law at the time of the deficient performance. This interpretation led the state court to conclude that Young had suffered no prejudice (under the second prong of Strickland) because the Texas statute subsequently had been amended to remove the bar to further prosecution following dismissal.

The determinant question on appeal is whether the state habeas court's conclusion that Young was not prejudiced by his counsel's deficient performance was contrary to, or an unreasonable application of, federal law. Two cases will inform the court's application of Strickland in these circumstances: Lockhart v. Fretwell, supra, and Williams v. Taylor, 529 U.S. 362 (2000). In Fretwell, the Supreme Court stated that a Strickland prejudice "analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally

2

unfair or unreliable, is defective" and "may grant the defendant a windfall to which the law does not entitle him." 529 U.S. at 369-70. Such "[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Id. at 372. Fretwell, however, was further delineated by the Court in Williams: Fretwell does "not justify a departure from a straightforward application of Strickland when the ineffectiveness of counsel does deprive the defendant of a substantive or procedural right to which the law entitles him." 529 U.S. at 393 (emphasis in original). Accordingly, the question in this case is whether the undisputed deficient performance of Young's counsel deprived Young of a substantive or procedural right to which he was entitled. Fretwell, 506 U.S. at 372; Williams, 529 U.S. at 393.

The state habeas court concluded that, under Texas law, if Young's counsel had moved for dismissal, Young would have been "entitled" to dismissal of the prosecution, and that the State would have been barred from further prosecution. It is therefore clear that the state habeas court found that the deficient performance of Young's counsel deprived him of substantive and procedural rights to which the law entitled him. Yet, the state habeas court, without reference to Williams, applied Fretwell to conclude that ultimately Young was not prejudiced because the statute subsequently had been amended to allow reprosecution after dismissal of the indictment. Because this holding fails to properly distinguish Fretwell and disregards Williams'

3

interpretation of <u>Fretwell</u>, it is both contrary to, and an unreasonable application of, Supreme Court precedent.  Because the state habeas court concluded that there was a reasonable probability that Young would not have been prosecuted for the murder of Tracy Ann Bering had his counsel moved for dismissal, Young has established the requisite prejudice under <u>Strickland</u>.

I

On September 20, 1991, Tracy Ann Bering was murdered.  Young was arrested, and Jaime Gandara was appointed to represent him, that same day.  Young was released on bail, but he was not indicted until February 16, 1993, approximately seventeen months later, which was the third term of court following his arrest and release on bail.  At the time of Young's arrest, indictment and trial for murder, article 32.01 of the Texas Code of Criminal Procedure provided:

> When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation before the district court, <u>the prosecution</u>, unless otherwise ordered by the court, for good cause shown, supported by affidavit, <u>shall be dismissed</u> and the bail discharged, <u>if indictment or information be not presented against such defendant at the next term of the court</u> which is held after his commitment or admission to bail.

(Emphasis added.)  During that time, article 28.061 of the Code of Criminal Procedure provided, in relevant part,

> A <u>discharge</u> under ... Article 32.01 of this code <u>is a bar to any further prosecution</u> for the offense discharged and for any other offense arising out of the same transaction, other than an offense of a higher grade that the attorney representing the state and

4

> prosecuting the offense that was discharged
> does not have the primary duty to prosecute.

(Emphasis added.)

Thus, under the express terms of Article 32.01, by the first Monday of July 1992, Young would have been entitled to have the prosecution against him dismissed with prejudice under Article 28.061 because the State had not yet indicted him, unless the State was able to demonstrate good cause for the delay. However, his appointed counsel did not seek such a dismissal, and Young was indicted for the murder of Tracy Ann Bering approximately seventeen months after his arrest.

Young filed two pre-trial motions to dismiss the indictment for speedy trial violations, which the trial court denied after a hearing. Following a jury trial, Young was convicted of murder. Young was sentenced to sixty years in prison, a sentence he is now serving.

The conviction and sentence were affirmed on direct appeal to the Court of Appeals, Eighth District of Texas at El Paso, on August 14, 1997, in an unpublished opinion. Young v. State, No. 08-95-00251-CR. On direct appeal, Young argued that the trial court erred by denying his motions to dismiss for speedy trial violations. In its brief on direct appeal, the State admitted that the pre-indictment delay was clearly attributable to the State. Although the state court of appeals rejected Young's speedy trial claim, it did so on the ground that Young had filed motions for continuance in which he asserted that he would not be prejudiced by a delay of the trial. The state court of appeals noted, however,

5

that the State had not explained the twenty-seven month delay between Young's arrest and initial trial setting.  Obviously, that twenty-seven month period includes the seventeen months between Young's arrest and indictment.  Thus, the state court of appeals implicitly concluded that the State had failed to give any reasons for the pre-indictment delay.

Young petitioned the Texas Court of Criminal Appeals for discretionary review.  Young argued that the court of appeals incorrectly failed to apply the provisions of articles 32.01 and 28.061 to reverse for the reason that the indictment was not presented within the time prescribed by law.  The Texas Court of Criminal Appeals refused the petition for discretionary review on January 21, 1998.  Young v. State, PDR No. 1566-97.

Young filed his post-conviction application for relief in state court on February 23, 1999.  He asserted various claims of ineffective assistance of counsel and insufficiency of the evidence.  Pertinent to this appeal is Young's claim that his Sixth Amendment rights were violated by ineffective assistance of his counsel, who failed to move for the dismissal of the prosecution for failure to timely indict under Texas law.[1]  The state habeas trial court concluded that trial counsel rendered deficient performance by failing to move for dismissal of the prosecution and that Young would have been entitled to a dismissal with prejudice

---

[1]Gandara completed an affidavit stating that this failure was an oversight; the state habeas court made an explicit factual determination that the failure was not the result of any strategic or tactical choice.  Deficient performance of counsel is not contested.

6

under the Texas statutes then in effect.  In pertinent part, the court made the following "Conclusions of Law":

> 1.    Had Applicant's attorney, Jaime Gandara, moved for dismissal of the charges and discharge of the bail against Applicant for the offense for which he was convicted prior to the presentation of an indictment against Applicant, Applicant would have been legally entitled to such dismissal and discharge under Texas Code of Criminal Procedure, article 32.01.
>
> 2.    Had the charges against Applicant been dismissed and his bail discharged under Texas Code of Criminal Procedure, article 32.01, the State would have been barred under Texas Code of Criminal procedure, article 28.061, from any further prosecution of Applicant for the offense for which he was convicted.
>
> 3. The failure of Applicant's attorney , Jaime Gandara, to move, prior to indictment, for dismissal of the charges for which Applicant was convicted under Texas Code of Criminal Procedure, article 32.01, fell below a minimum objective standard of reasonable representation by legal counsel of defendants in Texas, as established by prevailing professional norms.
>
> 4.    But for the failure of Applicant's attorney, Jaime Gandara, to move, prior to indictment, for dismissal of the charges for which Applicant was convicted under Texas Code of Criminal Procedure, article 32.01, there is a reasonable probability that Applicant would not have been convicted of any offense arising out of the same transaction . . . because the State would have been barred from indicting him under all extant statutory law.
>
> 5. Because, under current statutory law, the State would be free to indict Applicant for the same offense, were it dismissed under Texas Code of Criminal Procedure 32.01, Applicant has not been prejudiced within the meaning of Strickland v. Washington, as elaborated by Lockhart v. Fretwell, 506 U.S.

7

                    364 (1993) and <u>Ex parte Butler</u>, 884 S.W.2d 782
                    (Tex. Crim. App. 1994).

The court thus concluded, however, that Young was not prejudiced by

this deficiency under <u>Strickland v. Washington</u>, 466 U.S. 668

(1984), as applied in <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993) and

<u>Ex parte Butler</u>, 884 S.W.2d 782 (Tex. Crim. App. 1994), because

prejudice was to be determined by the Texas law in effect at the

time of habeas review, which had been amended by the legislature in

1997 to permit re-indictment in the case of dismissal for untimely

indictment.[2]  In October 2000, the Texas Court of Criminal Appeals

denied relief without a written order based on the findings of the

trial court.

     Young filed the present federal habeas petition under 28

U.S.C. § 2254 in October 2000.  He asserted that counsel rendered

ineffective assistance by failing to move for dismissal of the

indictment and by failing to request three jury instructions.  In

July 2001, the magistrate judge recommended that Young's jury

---

[2]     Articles 32.01 and 28.061 were amended effective May 26, 1997.
The amended version of article 32.01 allows the State at least six
months in which to present an indictment.  Article 28.061 was
amended to delete the reference to article 32.01, thereby removing
the bar to further prosecution after dismissal for failure to
timely indict.  <u>See</u> <u>also</u> TEX. CODE CRIM. P. art. 15.14 ("If a
prosecution of a defendant is dismissed under Article 32.01, the
defendant may be rearrested for the same criminal conduct alleged
in the dismissed prosecution only upon presentation of indictment
or information for the offense and the issuance of a capias
subsequent to the indictment or information.") (effective May 26,
1997).  The Texas Legislature provided, however, that all of these
amendments applied "only to the prosecution of a defendant arrested
for an offense on or after the effective date of this Act.  The
prosecution of a defendant arrested before the effective date of
this Act is covered by the law in effect when the arrest occurred,
and the former law is continued in effect for that purpose."  Acts
1997, 75th Leg., ch. 289, § 4.

instruction claims be denied. However, he recommended that a writ of habeas corpus be granted on Young's motion-to-dismiss claim asserting that the state habeas court had unreasonably applied <u>Fretwell</u>. On March 4, 2002, the district court adopted the magistrate's recommendations on the jury instruction claims, but declined to grant relief on the motion-to-dismiss claim. The district court agreed with the magistrate judge that the state habeas court had unreasonably applied <u>Fretwell</u>, but reasoned that Young nonetheless failed to establish prejudice under <u>Strickland</u> because Young failed to show that the State could not demonstrate good cause for the delay in indicting him or that the trial court would have dismissed the indictment.

Young filed a timely motion for reconsideration under Rule 59, which was denied. On April 1, he filed a timely notice of appeal and request for certificate of appealability ("COA"). The request for the certificate focused on the district court's prejudice analysis, and in particular the district court's reliance on the existence of a good-cause defense by the State to Young's motion to dismiss under the relevant statute. The district court granted the COA without specifying any particular issue on April 19, 2002.[3]

II

---

[3]Although there is some confusion in the briefs about the scope of the COA, it is clear from review of the request for COA that Young sought review only of the prejudice determination by the district court. Thus, consistent with <u>Muniz v. Johnson</u>, 114 F.3d 43 (5th Cir. 1997) and <u>Else v. Johnson</u>, 104 F.3d 82, 83 (5th Cir. 1997), this court is not deprived of jurisdiction to hear this appeal. 28 U.S.C. § 2253(c)(3).

Young argues that the state habeas trial court unreasonably applied clearly established federal law by holding that he was not prejudiced by what all parties and all courts have agreed was deficient performance by trial counsel. Young maintains that the state court's application of the Strickland analysis -- in particular its application of Fretwell to the facts of this case -- was objectively unreasonable. The State argues that the state habeas court did not unreasonably apply Fretwell, because Young failed to establish that he would have been entitled to dismissal of the prosecution with prejudice had his counsel moved for dismissal. The State contends that Young failed to establish his entitlement to dismissal for two reasons: (1) Young did not show that the State would have been unable to demonstrate good cause for the delay; and (2) a majority of Texas courts have held that the pre-1997 version of art. 28.061 is unconstitutional under state law, and the likelihood of a different outcome attributable to an unconstitutional statute should be regarded as a potential windfall to Young under Fretwell, rather than legitimate prejudice under Strickland. Alternatively, the State argues that, even if the state habeas court incorrectly applied Fretwell, Young failed to meet his burden of affirmatively proving prejudice under Strickland. The State argues that, to establish Strickland prejudice, Young was required to prove that the State would have been unable to demonstrate good cause for the delayed indictment. Although the state habeas court, applying Fretwell, held that Young was not prejudiced because he could be re-indicted under the 1997

10

amendment to art. 32.01, the State does not press that argument on appeal.[4]

## III

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless the adjudication of the petitioner's claim in state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Before this court may grant habeas relief under the unreasonable application clause, the state court's application of clearly established federal law must be more than merely incorrect or erroneous, it must be objectively unreasonable. Williams, 529 U.S. at 411 (O'Connor, J., writing for the Court). A state court's decision is an unreasonable application of clearly established federal law whenever the state court identifies the correct governing legal principle from the Supreme Court's decisions but applies that principle to the facts of the prisoner's case in an "objectively unreasonable" manner. See Caldwell v.

---

[4]   As we have noted, the Texas Legislature provided that the amendment to art. 28.061, which omits the reference to art. 32.01 and thus removes the bar to further prosecution after dismissal for failure to timely indict, does not apply to defendants arrested prior to May 26, 1997, the effective date of the amendments. See Ex parte Barnes, 959 S.W.2d 313, 315 n.1 (Tex. App. -- Fort Worth 1998).

<u>Johnson</u>, 226 F.3d 367, 372 (5th Cir. 2000) (citing <u>Williams</u>, 529 U.S. at 409). An unreasonable application may also occur if "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Williams</u>, 529 U.S. at 407. A state court's decision is contrary to Supreme Court precedent (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law", or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." <u>Id</u>. at 405. A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). We review the state habeas court's decision under the same standard used by the district court. <u>Beazley v. Johnson</u>, 242 F.3d 248, 255 (5th Cir.), <u>cert. denied</u>, 534 U.S. 945 (2001).

IV

As we have indicated, the question we must decide is whether the state habeas court's conclusion that Young was not prejudiced by his counsel's deficient performance was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Although the state habeas court concluded that Young would have been entitled to dismissal of the prosecution with prejudice had his counsel moved for dismissal, it nevertheless concluded that "[b]ecause, under current statutory

12

law, the State would be free to indict Applicant for the same offense, were it dismissed under Texas Code of Criminal Procedure article 32.01, Applicant has not been prejudiced within the meaning of <u>Strickland v. Washington</u>, as elaborated by <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993) and <u>Ex parte Butler</u>, 884 S.W.2d 782 (Tex. Crim. App. 1994)."

The well-established two-prong analysis for ineffective assistance claims requires that petitioners establish first, that there was deficient performance by counsel and second, that this deficiency prejudiced the defendant.  Essentially, a petitioner must show that there is "at least 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  <u>Neal v. Puckett</u>, 286 F.3d 230, 241 (5th Cir. 2002) (en banc) (quoting <u>Strickland</u>, 466 U.S. at 694), <u>cert. denied</u>, 537 U.S. 1104 (2003).  Two cases have since elaborated on <u>Strickland</u>'s prejudice analysis in ways that are pertinent to our analysis today:  <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993), and <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).  We will address each in turn.

A

The state habeas court concluded that <u>Lockhart v. Fretwell</u> refitted the traditional prejudice analysis under <u>Strickland</u>; it relied on <u>Fretwell</u> for the proposition that prejudice was to be determined under the law in effect at the time of habeas review rather than the law at the time of deficient performance. Accordingly, the state court considered itself bound by the current

Texas statute, amended in 1997 to remove the bar to further prosecution after a dismissal for failure to timely indict, and concluded that Young had suffered no prejudice because he could simply be re-indicted under current Texas law.[5]

In Fretwell, the Supreme Court considered whether "counsel's failure to make an objection in a state criminal sentencing proceeding -- an objection that would have been supported by a decision that subsequently was overruled -- constitutes 'prejudice' within the meaning of [its] decision in Strickland v. Washington." Fretwell, 506 U.S. at 366. Fretwell argued that his counsel was ineffective because he had failed to object at sentencing to the use of an aggravating factor that duplicated an element of the underlying felony -- murder in the course of a robbery; the objection would have been specifically supported at the time of trial by then-existing Eighth Circuit precedent, Collins v. Lockhart, 754 F.2d 258 (8th Cir. 1985). However, between

---

[5]     Texas courts previously had relied on Fretwell to deny habeas relief due to changes in the law. See Ex parte Butler, 884 S.W.2d 782 (Tex. Crim. App. 1994); Easley v. State, 986 S.W.2d 264 (Tex. App. -- San Antonio, 1998). While the Butler court appropriately relied on Fretwell in the context of abrogated case law, it interpreted Fretwell using broad language, holding that "the prevailing law when applicant filed this writ must be applied in our determination of whether counsel's failure to appeal the denial of applicant's motion to quash caused counsel to be ineffective." Butler, 884 S.W.2d at 784 (relying on Fretwell). In Easley, the court addressed claims under the Texas statutes at issue in this case; Easley claimed ineffective assistance for counsel's failure to seek habeas relief on the basis of an untimely indictment. The court relied on Butler's interpretation of Fretwell to conclude that Easley had not been prejudiced because the statutes at issue had been amended to permit the State to refile charges once the trial court dismissed the case. Easley, 986 S.W.2d at 270.

14

Fretwell's trial and his habeas case, <u>Collins</u> had been overruled. Under these circumstances, the Supreme Court concluded that to permit Fretwell to benefit from this subsequently abrogated case law was a "windfall" to which he was not entitled.

The Court's opinion eschewed strict fidelity to a narrowly focused approach that would determine prejudice by simply asking whether the outcome would have been different; instead, it held that even though the outcome might have been favorable to petitioner if counsel had properly objected, counsel's failure to object did not prejudice Fretwell, reasoning: "Our decisions have emphasized that the Sixth Amendment right to counsel exists in order to protect the fundamental right to a fair trial," <u>Fretwell</u>, 506 U.S. at 368; "[a]bsent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated," <u>id.</u> at 369 (quoting <u>United States v. Cronic</u>, 466 U.S. 648, 658 (1984)); "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him," <u>id.</u> at 370; "[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him," <u>id</u>. at 372. In sum, because the case had been later overruled, Fretwell was not entitled, under the Constitution, to the probable

15

benefit of counsel's objection.  Consequently, counsel's admitted failures had not deprived Fretwell of any substantive or procedural right to which the law entitled him and, therefore, he "suffered no prejudice from his counsel's deficient performance."  Id.

Justice O'Connor concurred, noting that "today we hold that the court making the prejudice determination may not consider the effect of an objection it knows to be meritless under current governing law, even if the objection might have been considered meritorious at the time of its omission."  Id. at 374.

B

We now turn to the second case that informs our prejudice analysis under Strickland -- Williams v. Taylor, 529 U.S. 362 (2000).  Although Williams was decided on April 18, 2000, the state habeas court did not cite it in its findings of fact and conclusions of law filed nearly four months later, on August 15, 2000.

In Williams, the Virginia Supreme Court rejected the petitioner's claim of ineffective assistance of counsel, relying on the Supreme Court's opinion in Fretwell.  The Virginia court held that the trial judge, who had granted habeas relief, erred in relying on mere outcome determination, rather than a review of whether the result of the proceeding was fundamentally unfair or unreliable.  Williams, 529 U.S. at 371.  The Supreme Court held that the Virginia Supreme Court erred "in holding that our decision in [Fretwell] . . . modified or in some way supplanted the rule set down in Strickland."  Williams, 529 U.S. at 391.

16

In explaining why the Virginia Supreme Court had erred, the Court quite clearly explained its reasoning in _Fretwell_, and narrowly defined its limitations:

> [W]hile the _Strickland_ test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims, there are situations in which the overriding focus on fundamental fairness may affect the analysis. Thus, on the one hand, as _Strickland_ itself explained, there are a few situations in which prejudice may be presumed. And, on the other hand, there are also situations in which it would be unjust to characterize the likelihood of a different outcome as legitimate "prejudice." Even if a defendant's false testimony might have persuaded the jury to acquit him, it is not fundamentally unfair to conclude that he was not prejudiced by counsel's interference with his intended perjury.

> Similarly, in _Lockhart_, we concluded that, given the overriding interest in fundamental fairness, the likelihood of a different outcome attributable to an incorrect interpretation of the law should be regarded as a potential "windfall" to the defendant rather than the legitimate "prejudice" contemplated by our opinion in Strickland. The death sentence that Arkansas had imposed on Bobby Ray Fretwell was based on an aggravating circumstance (murder committed for pecuniary gain) that duplicated an element of the underlying felony (murder in the course of a robbery). Shortly before the trial, the United States Court of Appeals for the Eighth Circuit had held that such "double counting" was impermissible, but Fretwell's lawyer (presumably because he was unaware of the _Collins_ decision) failed to object to the use of the pecuniary gain aggravator. Before Fretwell's claim for federal habeas corpus relief reached this Court, the _Collins_ case was overruled. Accordingly, even though the Arkansas trial judge probably would have sustained a timely objection to the double counting, it had become clear that the State had a right to rely on the disputed aggravating circumstance. _Because the_

17

> ineffectiveness of Fretwell's counsel had not
> deprived him of any substantive or procedural
> right to which the law entitled him, we held
> that his claim did not satisfy the "prejudice"
> component of the Strickland test.

Williams, 529 U.S. at 391-93 (Stevens, J., writing for the Court)(footnotes and citations omitted; emphasis added).

The Court went on to hold that the Virginia Supreme Court's decision was both "contrary to" and "involved an unreasonable application of" Strickland.  Id. at 391; see also id. at 413-14 (O'Connor, J., concurring).  To the extent "that the [Virginia] court's decision turned on its erroneous view that a 'mere' difference in outcome is not sufficient to establish constitutionally ineffective assistance of counsel," the court's analysis was "contrary to" Strickland.  Id. at 397.  Furthermore, because the Virginia Supreme Court "relied on the inapplicable exception recognized in Lockhart," its decision was an unreasonable application of Strickland and Fretwell.  Id.; see also id. at 407 (state court's decision is an unreasonable application of federal law if "the state court ... unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply").

Williams thus leaves no doubt that where deficient performance denies the petitioner a substantive or procedural right to which he is lawfully entitled, prejudice is to be determined, routinely, under the second prong of Strickland.  See id. at 393 ("departure from a straightforward application of Strickland [is not justified] when the ineffectiveness of counsel does deprive the defendant of

18

a substantive or procedural right to which the law entitles him")
(emphasis in original).

C

Thus, the question whether the prejudice analysis of
<u>Strickland</u> or <u>Fretwell</u> applies in this case turns on whether the
deficient performance by Young's counsel deprived him of a
substantive or procedural right -- here the right to have the
indictment dismissed with prejudice -- to which the law entitled
him.  We first distinguish the later overruled case law involved in
<u>Fretwell</u> from the later amended statutes in effect at the time of
Young's trial.  Next, we address whether the later amendments
somehow "disentitled" Young to the right and to the benefit of the
statutes in effect at the time of his trial.

1

<u>Fretwell</u> dealt with a right declared by a judicial decision,
a right which had achieved no recognition as a final statement of
the law.  Restated, the rule relied on by Fretwell was proclaimed
by a single judicial decision and was not finally settled as a
binding legal principle.  The case, and the rule it announced, had,
in fact, been overruled by the time Fretwell raised the issue in
habeas.  In short, Fretwell had no legal "entitlement" to a rule
that had never "vested" as a final statement of the law.  Implicit
in this concept is that <u>finality</u> of a federal constitutional rule
is never established until the Supreme Court has spoken.

Statutes, as "final" statements of the law, are
distinguishable.  Once a statute is duly enacted by the

19

legislature, it is a "final", if not necessarily permanent, statement of the law on that particular point.  Although it may be attacked in collateral proceedings as unconstitutional, it has achieved recognition as a final statement of the law by the lawgiver, that is, the legislature and, indeed, the state, and the statute confers benefits that the law recognizes and protects.  For example, a case that has been overruled is not authoritative in all pending and subsequent litigation, whereas a duly-enacted statute conferring procedural or substantive rights entitles its beneficiaries to those rights for the period in which it is validly operating.  Unlike the benefit sought in Fretwell, a state statute is not an error, misapprehension, or "right the law simply does not recognize."  Nix v. Whiteside, 475 U.S. 157, 186 (1986) (Blackmun, J., concurring).[6]  Thus Young was, at the time of his arrest, indictment and trial, legally entitled to the final "vested" rights conferred upon him by the duly enacted Texas statutes; Fretwell, on the other hand, was not lawfully entitled to claim the benefit of a judicial rule that had not become finally authoritative.

2

Notwithstanding the foregoing, the State argues -- although for the first time in this appeal -- that Young failed to establish prejudice because the pre-1997 version of art. 28.061 is unconstitutional under the Texas Constitution; thus, the same as

---

[6]    In Nix, the Court held that the defendant was not prejudiced by his counsel's failure to present perjured testimony.  475 U.S. at 175-76.

20

Fretwell, he was never entitled to the benefit of the statute at issue.

The lower appellate courts of Texas are divided on this issue.[7] On the one occasion that the issue reached the Texas Court of Criminal Appeals, it declined to consider it because the State failed to raise the issue before the trial court or the court of appeals. Ex parte Martin, 6 S.W.3d 524, 525 n.5 (Tex. Crim. App. 1999). However, the state habeas court, by concluding that Young would have been entitled to a dismissal with prejudice had his counsel moved for dismissal, implicitly must necessarily have concluded that Art. 28.061 is not unconstitutional under state law. See Ex parte Barnes, 959 S.W.2d 313, 316 n.5 (Tex. App. -- Fort Worth 1997) (when a trial court fails to make specific findings of fact and conclusions of law, it is presumed that the court made the necessary findings to support its decision). Furthermore, in our role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law. See Johnson v. Cain, 215 F.3d 489, 494 (5th Cir. 2000); Gibbs v. Johnson, 154 F.3d 253, 259 (5th Cir. 1998). Accordingly, AEDPA requires that we defer to this implicit conclusion and interpretation of state law by the state habeas court.

3

---

[7]    Compare Nguyen v. State, 882 S.W.2d 471 (Tex. App. -- Houston [1st Dist.] 1994) (art. 28.061 is constitutional) with Hixson v. State, 1 S.W.3d 160 (Tex. App. -- Corpus Christi 1999) (art. 28.061 is unconstitutional); Frenzel v. State, 963 S.W.2d 911 (Tex. App. -- Waco 1998) (same); Ex parte Barnes, 959 S.W.2d 313, 320 (Tex. App. -- Fort Worth 1997) (same); State v. Condran, 951 S.W.2d 178 (Tex. App. -- Dallas 1997) (same).

The district court held, and the State argues, that Young failed to carry his burden to prove that the indictment in fact would have been dismissed with prejudice; that is, he failed to show the absence of good cause for the State's delay in indicting him. See TEX. CODE CRIM. P. art. 32.01 (West 1989) ("prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall be dismissed . . . if indictment . . . be not presented . . . at the next term of the court which is held after [defendant's] commitment or admission to bail") (emphasis added). The State, however, suggests no factual basis on which "good cause" might have been found; it only argues that the absence of good cause was an element for Young to prove in order to establish his right to a dismissal with prejudice. As we have stated, however, the state habeas court concluded that, had Young's counsel moved for dismissal, Young "would have been legally entitled to such dismissal" and that, had the charges been dismissed, "the State would have been barred under [art.] 28.061, from any further prosecution of [Young]."[8] These conclusions make

---

[8] The State notes that the trial court issued three sets of findings of fact and conclusions of law in this case, which it argues should collectively constitute the factual findings by the state habeas court. The record reflects that Judge Guadalupe Rivera, of the 168th district court, El Paso County, Texas, issued three written documents that include or take the form of fact-finding. The first two, filed February 22 and March 3, 2000, respectively, are both entitled "Order on Application for Article 11.07 Post-Conviction Writ of Habeas Corpus" and contain virtually identical contents. Both state that Young "assumes but does not prove that the State would have been unable to establish good cause for the delayed indictment" and, therefore, he had not demonstrated that an attempt by trial counsel to dismiss the indictment would have resulted in a dismissal of the prosecution with prejudice. The third document is entitled "Findings of Fact and Conclusions of

22

clear an implicit factual determination by the state habeas court that the State would not have been able to demonstrate good cause for the delay in indicting Young. As a federal habeas court, we are bound by the state habeas court's factual findings, both implicit and explicit. Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." Valdez v. Cockrell, 274 F.3d 941, 948 n.11 (5th Cir. 2001). See also Goodwin v. Johnson, 132 F.3d 162, 183-84 (5th Cir. 1997) (findings of fact can be implied from explicit conclusions of law). AEDPA requires that we defer to the state habeas court's implicit factual determination that the State would not have been able to demonstrate good cause for the delay in indicting Young, especially when the State adduces no counter evidence to challenge the finding.

C

Thus, in the light of our required deference to the state habeas court's findings, both as to state law and to facts, the question whether the deficient performance by Young's counsel

---

Law" and was filed on August 15, 2000. This document was apparently adopted by the Court of Criminal Appeals on October 4, 2000. Because it is last in time, sharply conflicts with the previous documents filed on February 22 and March 3, 2000, explicitly purports to be "Findings of Fact and Conclusions of Law" and not merely "Orders", and was the basis of Young's appeal to the Court of Criminal Appeals, we accept this document as the relevant state habeas decision, and the one to which deference is owed under 28 U.S.C. § 2254(e)(1).

deprived him of a substantive or procedural right to which the law entitled him is answered by the state habeas court's conclusions of law:    Had Young's counsel moved for dismissal, Young "would have been legally entitled to such dismissal" and, had the charges been dismissed, "the State would have been barred under [art.] 28.061, from any further prosecution of [Young]."  Accordingly, to the extent that the state habeas court's "decision turned on its erroneous view that a 'mere' difference in outcome is not sufficient to establish constitutionally ineffective assistance of counsel," the court's analysis was "contrary to" Strickland. Williams, 529 U.S. at 397.  Furthermore, because the state habeas court "relied on the inapplicable exception recognized in [Fretwell]," its decision was an unreasonable application of Strickland, Fretwell, and Williams.  Id.

V

For the reasons we have stated, we must conclude that Young's conviction cannot stand because it results specifically and directly from the consequences of the State's denying him the right to effective counsel in violation of Young's right to counsel under the Sixth Amendment to the United States Constitution.   In practical terms, a constitutionally effective counsel would have moved to dismiss the indictment and the state court, on the record before us, would have been required to dismiss the prosecution against Young with prejudice.  In short, if Young had been provided effective counsel, as the State is required to do, Young would

24

never have been prosecuted, convicted and sentenced, all for the reason that the State failed to timely indict him.

Accordingly, the judgment of the district court is REVERSED, and the case is REMANDED to the district court with instructions to grant the Writ releasing Young from state custody.

REVERSED and REMANDED.

JONES, Circuit Judge, concurring:

I concur in the persuasive panel opinion but write separately to suggest that the State could have better presented its position in this case. Procedurally, this is a peculiar case indeed. Independent research convinces me that under current Texas law interpreting the old versions of TEX. CODE CRIM. PROC. §§ 28.061 and 32.01, Young is not "entitled" to relief. From this standpoint, the case looks a lot like Fretwell. On the other hand, the State's briefing pointed out none of the following points. While the interests of federalism strongly support finality in convictions, and the habeas petitioner bears the burden of proof, we are not authorized to litigate the State's case if the State does its job poorly.

The key legal question, as the proposed opinion frames it, "is whether the undisputed deficient performance of Young's counsel deprived Young of a substantive or procedural right to which he was entitled." The linchpin of this argument is the state habeas trial court's conclusion of law that: "Had Applicant's attorney, Jaime Gandara, moved for dismissal . . . Appellant would have been legally entitled to such dismissal and discharge under Texas Code of Criminal Procedure, Article 32.01." This conclusion is almost surely wrong under current Texas interpretation of the relevant provisions.

First, it is important to place Articles 28.061 and 32.01 in the proper context. Under controlling Texas law, these code provisions do not provide a basis for relief once the grand jury has returned the indictment. In <u>Brooks v. State</u>, 990 S.W.2d 278, 285 (Tex. Crim. App. 1999)(en banc), the Court of Criminal Appeals ruled that "Article 32.01 has no application once an indictment is returned." Thus, "the appellant waived his right to challenge the indictment since he filed his writ of habeas corpus almost a year and a half after the indictment was returned by the grand jury." <u>Id</u>. Following <u>Brooks</u>, the lower courts, in both habeas corpus proceedings and on direct appeal, have uniformly denied post-indictment relief under 28.061 and 32.01. See <u>Blumenstetter v. State</u>, 117 S.W.3d 541, 545 (Ct. App. Tex. - Texarkana 2003); <u>Ex Parte Martin</u>, 33 S.W.3d 843, 846 (Ct. App. Tex - Austin 2001); <u>Smith v. State</u>, 998 S.W.2d 683, 694 (Ct. App. Tex. - Corpus Christi 1999); <u>State v. Weiblen</u>, 2 S.W.3d 375, 375-76 (Ct. App. Tex. - San Antonio 1999).[9] Hence, <u>Brooks</u> operates as a bar to potential sandbagging, since it prohibits defendants from waiting until after

---

[9] Remarkably, the parties failed to cite any of this controlling case law. Instead, the government offered an argument concerning the constitutionality of these articles. In its brief, the government cited to <u>Ex Parte Torres</u>, 966 S.W.2d 723, 728 (Ct. App. Tex. - San Antonio 1998). However, the Court of Criminal Appeals subsequently vacated <u>Ex Parte Torres</u> in light of <u>Brooks</u>. See <u>Ex Parte Torres</u>, 993 S.W.2d 662, 662-63 (Tex. Crim. App. 1999). On remand, the appellate court affirmed "the trial court's order denying Torres' application for writ of habeas corpus" because "<u>Brooks</u> unambiguously holds that Article 32.01 has no application once an indictment is returned." <u>Ex Parte Torres</u>, 2000 WL 190544, *1 (Ct. App. Tex. - San Antonio 2000).

an indictment is returned to seek relief under the old statutory provisions.

Second, even if Young's counsel had moved pre-indictment for relief under the statutes, it is highly doubtful that Young has overcome the "good cause" exception to Article 32.01. Texas courts use a "Barker-like totality-of-circumstances test for the determination of good cause under Article 32.01." In re Martin, 6 S.W.3d 524, 528 (Tex. Crim. App. 1999)(citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). Therefore, the habeas court should consider, among other things: (1) the length of the delay; (2) the State's reason for the delay; (3) whether the delay was due to a lack of diligence on the part of the State; and (4) whether the delay caused harm to the accused. Martin, 6 S.W.3d at 528.[10] We need not engage in this inquiry ourselves. The state appellate court actually undertook this precise analysis on direct appeal in ruling on Young's constitutional speedy trial claim, and holding, after a thorough analysis, that Young "failed to make any showing of prejudice." The appellate decision, of course, concerned the entire period of delay from arrest to trial, whereas Young's statutory argument would focus on the period from arrest to indictment. I do not see a critical distinction. Thus, it is

---

[10] In fact, one court has found that since the defendant "first raised the issue on appeal, the State did not have the opportunity to present evidence on the good cause issue." Garrett v. State, 1999 WL 542577, *2 (Ct. App. Tex. - San Antonio 1999). Consequently, the record failed "to establish by a preponderance of the evidence that Garrett suffered prejudice as a result of his counsel's allegedly deficient performance." Id. (citations omitted).

difficult to see how "Young's counsel deprived Young of a substantive or procedural right to which he was entitled." This state finding is against Young.[11]

Third, these authorities raise the question, unexplored by the State, why this court must be chained to the state trial court's conclusion in habeas, noted above, that Young would have been entitled to relief under the old statutes. Some years ago, the state court might have been correct, but under current Texas caselaw, Young would not be so entitled. The panel opinion correctly criticizes the state habeas court for relying on the current versions of Articles 28.061 and 32.01, even though these provisions expressly applied prospectively beginning well after Young was arrested. On the other hand, when the Texas Court of Criminal Appeals ultimately denied Young's habeas petition in 2000, it had already decided <u>Brooks</u> and <u>Martin</u> and, in my view, would have been justified by these cases in its decision. Under <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002) (en banc), we are to defer to the State's ultimate decision, not its reasoning. The State, unfortunately, has made no argument to the federal courts based on the evolving interpretation of the old statutory provisions.

For these reasons, a compelling argument exists that Young was not prejudiced in light of the limited application of Articles 28.061 and 32.01. To hold that the failure of Young's

---

[11]    As the panel opinion notes, however, the State never articulated good cause specifically for its preindictment delay.

29

counsel to bring a pre-indictment habeas claim, in and of itself, constitutes prejudice under <u>Strickland</u>, seems to focus "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable[.]" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 370 (1993). Young appears to have reaped a windfall from the federal courts in habeas. As I said at the beginning, however, we are not allowed to litigate for the State. It is to be hoped that the State will be more thoroughly prepared in the future. I therefore concur in the panel opinion.